**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
WARREN SETHACHUTKUL,                              :
                                                  :   Civil Action No. 18-cv-3101 (KAM)(JO)
                 Plaintiff,          :
                                                  :
     v.                                          :   **AMENDED COMPLAINT**
                                                  :
JUMPSHOT, INC.                                    :
                                                  :   **Jury Trial Demanded**
                 Defendant.         :
------------------------------------------------------------ X

       Plaintiff Warren Sethachutkul ("Mr. Sethachutkul" or "Plaintiff"), by and through his undersigned counsel, Wigdor LLP, brings this action against Defendant Jumpshot, Inc. ("Jumpshot," the "Company," or "Defendant"), and alleges:

## NATURE OF THE CLAIMS

       1.     Throughout the summer of 2017, Plaintiff Warren Sethachutkul, a former salesman for Jumpshot, secured over $8,200,000 in deals for the Company. As a result, Mr. Sethachutkul is entitled to more than $800,000 in commissions from the Company. Yet, after paying Mr. Sethachutkul only $1,500 in commissions, Jumpshot fired him and now asserts that it owes Mr. Sethachutkul nothing. Jumpshot's conduct violated, and continues to violate, the Company's contracts with Mr. Sethachutkul and New York Labor Law §§ 191, 193. See, e.g., Kolchins v. Evolution Markets, Inc., No. 31, 2018 WL 1524710, at *4-5 (N.Y. Mar. 29, 2018); Ryan v. Kellogg Partners Inst. Servs., 19 N.Y.3d 1 (2012).

       2.     This action seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's breach of contract, breach of the implied covenant of good faith and fair dealing and violations of the New York Labor Law ("NYLL"), as well as for promissory estoppel and unjust enrichment.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as this action is based on the diversity of residence between the named parties and involves an amount in controversy exceeding $75,000.

4. Pursuant to 28 U.S.C. § 1391, venue is proper in this district because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

5. At all relevant times, Defendant continuously and systematically conducted business in Brooklyn, New York. Further, events giving rise to this action took place at Defendant's office located at 45 Main Street, Suite 504, Brooklyn, New York 11201.

## PARTIES

6. Plaintiff Warren Sethachutkul is a resident of the State of New York. At all relevant times, Mr. Sethachutkul was an "employee" and/or "eligible employee" as defined in all applicable statutes.

7. Defendant Jumpshot, Inc. is a Delaware foreign business corporation that analyses and sells user data to companies to inform their marketing strategies. At all relevant times, Jumpshot was an "employer" as defined in all applicable statues. Jumpshot's global headquarters is located at 333 Bryant Street, Suite 204, San Francisco, California 94107.

## FACTUAL ALLEGATIONS

**I. MR. SETHACHUTKUL'S COMMISSION PLAN**

8. On or around January 9, 2017, Deren Baker, Jumpshot's CEO, provided Mr. Sethachutkul with a proposed employment agreement which contained an offer for a full-time position as a Sales Director at Jumpshot.

9. On January 11, 2017, Mr. Sethachutkul accepted Jumpshot's offer by executing the proposed employment agreement (the "Employment Agreement").

10. Pursuant to the Employment Agreement, Mr. Sethachutkul is eligible to receive commission payments from Jumpshot based on his sales performance.

11. Additionally, the Employment Agreement states that Jumpshot and Mr. Sethachutkul would agree on the details of his commission plan within 30 days of his employment at the Company.

12. On February 6, 2017, Mr. Sethachutkul began working in Jumpshot's Sales Department under the supervision of the Company's Vice President of Sales, Eli Goodman.

13. In early 2017, however, Mr. Goodman communicated to Mr. Sethachutkul that Jumpshot would pay him a 10% commission on each deal on which he worked ("Commission Plan"). In response to Mr. Goodman, Mr. Sethachutkul verbally agreed to the Compensation Plan.

14. No agreement between Mr. Sethachutkul and Jumpshot conditions payment of Mr. Sethachutkul's earned commissions on his employment status; *i.e.*, Mr. Sethachutkul did not have to remain employed by Jumpshot in order to receive commission payments.

15. Jumpshot pays earned commissions on a sales contract to the person who secures the agreement after "revenue is recognized."

16. When Jumpshot receives payment from a client pursuant to a sales contract, revenue is recognized in relation to the agreement.

17. After revenue has been recognized, Jumpshot typically makes commission payments to its employees around the end or beginning of a sales quarter.

## II.      MR. SETHACHUTKUL SECURES SALES CONTRACTS

18.     In the summer of 2017, Mr. Sethachutkul closed the following sales contracts for Jumpshot:

- $5,000 agreement with Dreamworks signed on August 23, 2017;

- $10,000 agreement with Tsquared Insights SA signed on August 29, 2017;

- $5,000 agreement with Douglas signed on September 21, 2017;

- $12,500 agreement with Douglas signed on September 28, 2017;

- $5,210,000 agreement with Tsquared Insights SA signed on September 29, 2017;

- $3,000,000 agreement with Tsquared Insights SA signed on September 29, 2017; and

- $86,000 agreement with Bain and Company signed on in or around October 2017.

19.     When a Jumpshot employee closes a sales contract, the details of the contract, including which Jumpshot employee secured the sales contract and the amount of the commission payment owed to that employee, are entered into a computer program called Sales Force.

20.     Subsequently, Chris Wasik, Jumpshot's Controller, and Esfir Viner, Jumpshot's Senior Accountant, use the information entered into Sales Force to generate an excel spreadsheet for each Jumpshot employee who secured a sales contract(s).  The excel spreadsheet indicates whether revenue has been recognized on the sales contract(s) and whether an employee has been paid his or her earned commissions.

21.     In August 2017, Jumpshot recognized revenue on the $5,000 Dreamworks agreement and $10,000 Tsquared agreement.

22. As a result, in September 2017, pursuant to the Commission Plan, the Company paid Mr. Sethachutkul $1,500, 10% of the combined recognized revenue on the $5,000 Dreamworks agreement and $10,000 Tsquared agreement.

23. On or around October 23, 2017, Ms. Viner provided Mr. Sethachutkul with an excel spreadsheet containing the details of the sales contracts he secured for Jumpshot, including which companies entered into the sales contracts and the amount Jumpshot is owed pursuant to each contract. Additionally, the spreadsheet memorializes, in writing, the agreement between Jumpshot and Mr. Sethachuthul that Jumpshot will pay Mr. Sethchutkul 10% of the value of each deal on which he worked.

24. The spreadsheet further shows that, consistent with the parties' agreement, Jumpshot paid Mr. Sethachutkul's earned commission payments related to the $5,000 Dreamworks agreement and $10,000 Tsquared agreement,

### III. JUMPSHOT TERMINATES MR. SETHACHUTKUL

25. In or around December 2017, Jumpshot began to recognize revenue on the $5,210,000 and $3,000,000 sales contracts with Tsquared Insights SA.

26. As a result, Mr. Sethachutkul was set to receive his earned commissions in or around January 2018.

27. On December 8, 2017, Jumpshot terminated Mr. Sethachutkul. Mr. Sethachutkul's termination was plainly motivated by a desire on the part of Jumpshot not to pay him the commissions he earned ($821,000) in connection with the $5,210,000 and $3,000,000 sales contracts he secured with Tsquared Insights SA. However, Mr. Sethachutkul was never told that he needed to remain employed to receive his earned commissions. Moreover, even if Jumpshot had a policy requiring employees to remain employed in order to receive commission,

5

such policy would be in violation of New York public policy. See Kolchins, 2018 WL 1524710, at *4-5.

28. Other than the $1,500 commission payment made to Mr. Sethachutkul in September 2017, Jumpshot has not paid Mr. Sethachutkul any of his earned commissions on the aforementioned deals.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Violation of NYLL § 191)**

29. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

30. NYLL § 191 requires a covered employer to maintain a signed writing of the agreed terms of employment between the employer and its commission salespersons for at least three years.

31. Should a commission salesperson request the written terms of employment from a covered employer and the covered employer fails to produce the written terms of employment, a presumption arises that the terms of employment presented by the commission salesperson are the agreed terms of employment.

32. Plaintiff requested the terms of his employment with Defendant regarding the payment of his earned commissions and Defendant failed to produce the written terms of employment between Plaintiff and Defendant.

33. As a result of Defendant's willful and unlawful conduct, Plaintiff is entitled to an award of damages in an amount to be determined at trial, plus liquidated damages, prejudgment interest and reasonable attorneys' fees and costs.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Unlawful Deductions in Violation of NYLL § 193)**

34.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

35.     NYLL § 193 prohibits covered employers, such as Defendant, from making deductions from any employee's wages.

36.     Defendant made an unlawful deduction from Plaintiff's wages by failing to pay Plaintiff commission payments and stating that he will not receive any commission payments for revenues brought in on the sales contracts he secured for Defendant.

37.     Defendant does not have a good faith basis to believe that its failure to pay the aforementioned commission payments is in compliance with the NYLL.

38.     As a result of Defendant's willful and unlawful conduct, Plaintiff is entitled to an award of damages in an amount to be determined at trial, plus liquidated damages, prejudgment interest and reasonable attorneys' fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of Contract)**

39.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

40.     During Plaintiff's employment, Plaintiff and Defendant entered into a binding contract pursuant to which Plaintiff would be entitled to commission payments for his work pursuant to an agreed upon formula.  The terms of the contract did not require Plaintiff to remain employed by Defendant to be entitled to his earned commissions.

41. Defendant breached and continues to breach its agreement with Plaintiff by failing to pay Plaintiff his earned commissions related to sales contracts he secured for Defendant.

42. As a direct and proximate result of Defendant's breach of its agreement with Plaintiff, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of damages to the greatest extent permitted under law.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

43. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

44. During Plaintiff's employment, Plaintiff and Defendant entered into a binding contract pursuant to which Plaintiff would be entitled to commission payments for his work pursuant to an agreed upon formula. The terms of the contract did not require Plaintiff to remain employed by Defendant to be entitled to his earned commissions.

45. Defendant owed a duty to Plaintiff to act in good faith and conduct fair dealing under the contract. Defendant breached and continues to breach this implied covenant of good faith and fair dealing by failing to pay Plaintiff his earned commissions related to sales contracts he secured for Defendant.

46. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of damages to the greatest extent permitted under law.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Promissory Estoppel)**

47. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

48. During Plaintiff's employment, Defendant promised to pay Plaintiff commission payments for his work pursuant to an agreed upon formula. This promise was not qualified by any requirement that Plaintiff remain employed by Defendant until the time of the commission payments.

49. Plaintiff reasonably relied on Defendant's promise by, *inter alia*, remaining employed by Defendant and working to generate millions of dollars in sales contracts for Defendant.

50. Defendant failed to act in accordance with its promise by failing to pay Plaintiff his earned commissions and stating that he will not receive any earned commissions for revenues generated from the sales contracts he secured for Defendant.

51. As a direct and proximate result of Defendant's failure to act in accordance with its promise, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of damages to the greatest extent permitted under law.

## AS AND FOR A SIXTH CAUSE OF ACTION
**(Unjust Enrichment)**

52. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

53. During Plaintiff's employment, Defendant promised to pay Plaintiff commission payments for his work pursuant to an agreed upon formula. This promise was not qualified by

any requirement that Plaintiff remain employed by Defendant until the time of the commission payments.

54. Plaintiff reasonably relied on Defendant's promise by, *inter alia*, remaining employed by Defendant and working to generate millions of dollars of profits for Defendant. As a result, Defendant was enriched at Plaintiff's expense.

55. Permitting Defendant to retain the monies it received due to Plaintiff's work would violate notions of good conscience and equity and, thus, Defendant should be required to remit to Plaintiff the monies it received due to his work.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the State of New York;

B. An injunction and order permanently restraining Defendant and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An order directing Defendant to place Plaintiff in the position he would have occupied, but for Defendant's unlawful conduct;

D. An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E. An award of liquidated damages;

F. Prejudgment interest on all amounts due;

G. An award of costs incurred by Plaintiff in prosecuting this action, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: August 3, 2018
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
Michael J. Willemin
Taylor J. Crabill

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
tcrabill@wigdorlaw.com

*Counsel for Plaintiff*